UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BMW OF NORTH AMERICA, LLC and ) <br> BAYERISCHE MOTOREN WERKE, AG, ) <br> ) <br> Plaintiffs, ) <br> vs. ) <br> ) <br> QUALITY STAR BENZZ LLC, ) <br> ) <br> Defendant. ) <br> ) | Case No.: 2:12-cv-00889-GMN-VCF <br><br> **ORDER** |

Pending before the Court is the Motion for Default Judgment (ECF No. 14) filed by Plaintiffs BMW of North America, LLC ("BMW NA") and Bayerische Motoren Werke AG ("BMW AG") (collectively "Plaintiffs"). Defendant Quality Star Benzz LLC ("Defendant") did not file a response. For the reasons discussed below, the Court GRANTS, in part, and DENIES, in part, Plaintiffs' Motion for Default Judgment.

**I.     BACKGROUND**

This case arose out of a trademark dispute and alleged acts of trademark infringement. Plaintiffs are in the business of designing, manufacturing, distributing, and servicing motor vehicles and other products under various trademarks. (Compl. ¶ 7, ECF No. 1.) More specifically, the Complaint alleges that BMW AG designs and manufactures vehicles, parts, and products for sale in Europe and for export and sale throughout the world. (*Id.* ¶ 2.) BMW NA distributes new and previously owned BMW passenger cars and light trucks through its authorized dealer networks across the United States. (*Id.* ¶ 1.) BMW AG owns the U.S. Registrations for Plaintiffs' various trademarks, duly and legally issued (BMW, Registration No. 613,465; BMW, Registration No. 1,170,556; BMW, Registration No. 1,450,212; B M W,

Registration No. 2,752,258; BMW, Registration No. 3,418,573.) (collectively the "Marks"). (*Id.* ¶¶ 10-11.)  BMW AG has licensed its Marks to BMW NA in connection with its services, and BMW NA in turn authorizes BMW dealerships to use the Marks in connection with the sale and/or service of BMW products. (*Id.* ¶¶ 12-13.)  BMW NA has expended millions of dollars in advertising across the United States in connection with its Marks making them famous. (*Id.* ¶ 15.)  BMW NA has taken steps to assure that all authorized BMW dealers and service providers using its Marks are of the highest quality to create and maintain goodwill among its customers. (*Id.* ¶ 14.)

The Complaint further alleges that Defendant is an automotive repair business specializing in the service and repair of BMW vehicles, with its principal place of business in Las Vegas, Nevada. (*Id.* ¶ 3; Mot. for Default J. 1:27-28, ECF No. 14.)  Defendant is not a BMW dealer or otherwise affiliated with BMW. (*Id.*)

Plaintiffs claim that Defendant displays the Marks on Defendant's signs and banners at its place of business and on its website without Plaintiffs' authorization. (Compl. ¶ 16, ECF No. 1.)  Plaintiffs sent Defendant multiple letters requesting that it cease and desist all unauthorized uses of Plaintiffs' Marks, but Defendant failed to respond and continued its usage of the Marks. (*Id.* ¶¶ 17-18).

Plaintiffs assert four causes of action: (1) trademark infringement; (2) unfair competition and false designation of origin; (3) deceptive trade practices; and (4) unjust enrichment. (*Id.* at 1:23-24).  Plaintiffs sought injunctive and monetary relief against Defendant for unauthorized use of Plaintiffs' Marks. (*Id.* at 1:22, 24).  Defendant failed to answer the Complaint.  As a result, Plaintiffs filed a motion for entry of default against Defendant, (Req. for Clerk's Entry of Default, ECF No. 8), and the Clerk entered default as to Defendant on June 27, 2012, (Clerk's Entry of Default, ECF No. 9).  On August 3, 2012, Plaintiffs filed this motion requesting that the Court enter a default judgment against Defendant and a finding as to

attorneys' fees and costs. (Mot. for Default J., ECF No. 14).

## II.     **DEFAULT JUDGMENT**

### A.     Legal Standard

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  Rule 55(b)(2) further provides that a court may enter a default judgment against a defendant who has failed to appear. Fed. R. Civ. P. 55(b)(2).

Whether to enter a default judgment is a question within the discretion of the trial court. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In determining whether to grant a default judgment, the trial court should consider the seven factors articulated by the Ninth Circuit in *Eitel v. McCool*:

> (1)     the possibility of prejudice to plaintiff,
>
> (2)     the merits of the claim(s),
>
> (3)     the sufficiency of the complaint,
>
> (4)     the amount of money at stake,
>
> (5)     the possibility of a dispute concerning materials,
>
> (6)     whether default was due to excusable neglect, and
>
> (7)     the policy favoring a decision on the merits.

782 F.2d 1470, 1471-72 (9th Cir. 1986).  In applying these *Eitel* factors, the factual allegations of the complaint are taken as true, except those relating to the amount of damages. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

### B.     Discussion

#### 1.     *Possibility of Prejudice to the Plaintiff.*

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default

judgment is not entered. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal.2002). In this case, on June 27, 2012, the Clerk entered default against Defendant for its failure to answer the Complaint and defend the lawsuit. (Clerk's Entry of Default, ECF No. 9). Defendant has failed to appear in this action and is likely to fail in otherwise responding to the Complaint. As a result, Plaintiffs will suffer prejudice if default judgment is not entered as Plaintiffs will have no other means to litigate its claims. *See PepsiCo*, 238 F. Supp. 2d at 1177 ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery"). Thus, the first *Eitel* factor weighs in favor of an entry of default judgment.

### *2. Sufficiency of the Complaint and Merits of the Claims.*

The second and third *Eitel* factors favor a default judgment when the "plaintiff state[s] a claim on which the plaintiff may recover." *PepsiCo*, 238 F. Supp. 2d at 1175; *see Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978) (affirming a default judgment when the complaint sufficiently stated a claim for relief under the "liberal pleading standards embodied in Rule 8"); *see also* Fed. R. Civ. P. 8. Plaintiffs' Complaint is well pleaded in that it identifies Defendant, clearly identifies the registered trademarks relevant to the instant action, describes Defendant's conduct of alleged violations of the Lanham Act, and provides evidence substantiating each cause of action. For the reasons discussed below, Plaintiffs' Complaint also sufficiently states plausible claims for relief for trademark infringement, unfair competition and false designation of origin, deceptive trade practices, and unjust enrichment, pursuant to Rule 8 of the Federal Rules of Civil Procedure. (Compl. 1:23-24, ECF No. 1.) Because Plaintiffs have adequately pled their claims against Defendant, the second and third *Eitel* factors weigh in favor of an entry of default judgment.

#### a. Federal Trademark Infringement

To prevail on their trademark infringement claim under The Lanham Act, Plaintiffs must

show that Defendant, without their consent, used in commerce a reproduction or copy of a registered trademark in connection with the sale or advertising of any goods or services and that such use is likely to deceive or to cause confusion or mistake. 15 U.S.C. § 1114(1)(a).[1]

In the instant action, Plaintiffs' Complaint properly alleges the elements for federal trademark infringement by identifying the Marks and the extent to which Plaintiffs have used the Marks in making them famous. (Compl. ¶¶ 10-11, 15, ECF No. 1.)  Plaintiffs' Complaint also identifies how Defendant's use of the Marks on its signs, banners, and website is unauthorized. (*Id.* ¶ 16.)  Plaintiffs' Complaint sufficiently establishes that Defendant's unauthorized use of the Marks causes confusion or deceives customers as to the origin, sponsorship, or approval of Defendant's products and services, or as to some affiliation or association with Plaintiffs. (*Id.* ¶¶ 22(a)-(b).)

### b. Trademark Infringement under Nevada Common Law, Unfair Competition, and False Designation of Origin

"The elements necessary to make out a claim of Nevada common law trademark infringement are identical to the elements necessary under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)." *Caesars World, Inc. v. Milanian,* 247 F. Supp. 2d 1171, 1193 (D. Nev. 2003) (citations omitted).  Thus, the Court assesses Plaintiffs' trademark infringement claim under Nevada common law together with their unfair competition and false designation of origin claim under 15 U.S.C. § 1125(a).  To prevail, Plaintiffs must show that Defendant used in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiffs, or as to the origin,

/ / /

---

[1] 15 U.S.C. § 1114(1)(a) is also commonly referred to as The Lanham Act § 32.

sponsorship, or approval of its goods by Plaintiffs. 15 U.S.C. § 1125(a)(1).[2]

Plaintiffs' Complaint in the instant action sufficiently identifies how Defendant's unauthorized use of the Marks falsely indicates that Defendant and its services are affiliated with Plaintiffs. (Compl. ¶¶ 22(a) and 31-32, ECF No. 1.)  Plaintiffs clearly state that Defendant is not affiliated with or sponsored by Plaintiffs nor has Defendant ever provided services for Plaintiffs, its subsidiaries, affiliates, or authorized agents. (*Id.* ¶¶ 19-20.)

### c.   Deceptive Trade Practices

To prevail on their deceptive trade practices claim under the Nevada Deceptive Trade and Unfair Practices Act, N.R.S. § 598.0915, Plaintiffs must show that Defendant in the course of its business: knowingly passed off goods and services for sale or lease as those of the Plaintiffs; knowingly made a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease; or knowingly made a false representation as to affiliation, connection, association with, or certification by Plaintiffs.  Nev. Rev. Stat. § 598.0915 (2011).

Plaintiffs' Complaint sufficiently states that Defendant knowingly passes off its automotive repair services as affiliated with, sponsored by, or approved by Plaintiffs, even though Defendant is not affiliated with nor ever provided services for Plaintiffs. (Compl. ¶¶ 19-20, 41, ECF No. 1.)  Plaintiffs further state that Defendant's acts consequentially deceive and mislead the public. (*Id.* ¶ 42.)

### d.   Unjust Enrichment

To prevail on their unjust enrichment claim under Nevada common law, Plaintiffs must show Defendant "has and retains a benefit which in equity and good conscience belongs to another." *Unionamerica Mortg. & Equity Trust v. McDonald*, 97 Nev. 210, 212 (1981) (citation omitted).  The Nevada Supreme Court has instructed that, as a counterpart of the doctrine of

---

[2] 15 U.S.C. § 1114(1)(a) is also commonly referred to as The Lanham Act § 43.

quasi-contract, the essential elements of such a claim are (1) "a benefit conferred on the defendant by the plaintiff"; (2) "appreciation by the defendant of such a benefit"; and (3) acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Id.* at 1273 (citation omitted).

In the instant case, Plaintiffs' Complaint sufficiently states that Defendant's unauthorized use of the Marks has not only unjustly enriched Defendant, but has also conferred a benefit on Defendant at Plaintiffs' expense and to Plaintiffs' loss and detriment. (Comp. ¶¶ 22(c) and 45-46, ECF No. 1.) Plaintiffs further state that Defendant continues to accept and retain benefits at Plaintiffs' expense, loss, and detriment. (*Id.* ¶ 47.)

### 3. *Amount of Money at Stake.*

The fourth *Eitel* factor concerns the amount of money at stake in relation to the seriousness of Defendant's conduct. *See PepsiCo., Inc.*, 238 F. Supp. 2d at 1176. Plaintiffs do not seek monetary relief (Mot. for Default J. 4:17-20, ECF No. 14), but request an award of attorneys' fees (*Id.* at 6:11-7:2). Plaintiffs, however, did not specify the exact sums of money to be awarded; thus, the fourth *Eitel* factor weighs neither in favor nor against an entry of default judgment.

### 4. *Possibility of a Dispute Concerning Material Facts.*

The fifth *Eitel* factor weighs the possibility of a dispute regarding any material facts in the case. *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Id.* (citing *TeleVideo Sys., Inc.*, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam)). Given the sufficiency of Plaintiffs' Complaint in alleging the facts necessary to establish their claims for relief, and Defendant's subsequent failure to answer, no dispute has been raised regarding material elements in the Complaint. Furthermore, it is unlikely that any such dispute will arise. "[N]o genuine dispute

of material facts would preclude granting [Plaintiffs'] motion." *PepsiCo, Inc.,* 238 F.Supp.2d at 1177; *see also Geddes*, 559 F.2d at 560. Thus, the fifth *Eitel* factor weighs in favor of an entry of default judgment.

### 5. Excusable Neglect.

The sixth *Eitel* factor considers whether defendant's default is due to excusable neglect. *PepsiCo., Inc.,* 238 F. Supp. 2d at 1177. In the instant case, Plaintiffs properly served Defendant with the Summons and the Complaint, (Summons, ECF No. 7), but Defendant failed to respond. The Court finds that there is no evidence before it that Defendant's failure to respond is due to excusable neglect. *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam) (holding that it was "perfectly appropriate" for the district court to enter default judgment against a corporation that failed to appear in the action through licensed counsel). Thus, the sixth *Eitel* factor weighs against an entry of default judgment.

### 6. Policy Favoring Decisions on the Merits.

The seventh *Eitel* factor takes into account the policy under the Federal Rules of Civil Procedure favoring a decision on the merits. "Cases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The mere existence of Rule 55(b) of the Federal Rules of Civil Procedure, however, indicates that this preference, standing alone, is not dispositive. *See Eitel*, 782 F.2d at 1472; *PepsiCo, Inc.*, 238 F.Supp.2d at 1177; *Nev. Prop. 1 LLC v. Newcosmopolitanlasvegas.com*, No. 2:12-cv-00866-JCM-NJK, 2013 WL 167755, at *2 (D. Nev. Jan. 15, 2013).

Defendant's failure to respond to Plaintiffs' Complaint "makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Thus, while the final *Eitel* factor always weighs against an entry of default judgment, the Court is not precluded from entering a default judgment.

/ / /

#### C.  Conclusion

Having reviewed Plaintiffs' motion and evidence submitted and having assessed the *Eitel* factors as a whole, this Court concludes that the entry of default judgment against Defendant is appropriate.  The factual allegations of the complaint will be taken as true, except those regarding the amount of damages.

### III.  **INJUNCTIVE RELIEF**

#### A.  Legal Standard

Rule 65 of the Federal Rules of Civil Procedure governs preliminary injunctions and requires that a motion for preliminary injunction include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).  Courts have the power to grant injunctions to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of the Lanham Act. 15 U.S.C. § 1116(a).

"Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by defendants' continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988).  A preliminary injunction may be issued if a plaintiff establishes:

(1)  likelihood of success on the merits;

(2)  likelihood of irreparable harm in the absence of preliminary relief;

(3)  that the balance of equities tips in his favor; and

(4)  that an injunction is in the public interest.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "Injunctive relief [is] an

extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22.

The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l. Molders' & Allied Workers' Local Union No. 164*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).

"The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial.  The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil*, § 2949 at 471 (1973)).

**B.  Discussion**

Plaintiff seeks a permanent injunction prohibiting Defendant, its agents, servants, employees, attorneys, and all others in active concert or participation from:

(a) using Plaintiffs' Roundel logo, any colorable imitations thereof, and any other similar name, trademark or designation affiliated with Plaintiffs or its affiliates including, but not limited to, use on banners, signs, websites, advertisements, marketing materials, stationery, and business cards; and

/ / /

/ / /

(b)  committing any act that is likely to confuse, mislead, or deceive others into believing that Defendant, or its products and services, are associated with, sponsored by, or approved by the Plaintiffs.

(Compl. 8:23-9:5) Plaintiffs also request that Defendant be required to "deliver up" to Plaintiffs for destruction all labels, signs, banners, prints, packages, bottles, receptacles, containers, and advertisements in Defendant's possession of control bearing the Marks pursuant to 15 U.S.C. § 1118. (*Id.* at 9:19-22).

This Court has the "power to grant injunctions, according to the rules of equity and upon such terms as the [C]ourt may deem reasonable, to prevent" a trademark violation. 15 U.S.C. § 1116(a). In applying the *Winter* factors to the instant case, this Court finds that Plaintiffs are entitled to permanent injunctions against Defendant that enjoins Defendant from using the Marks. Such an injunction is appropriate under 15 U.S.C § 1114 and Nevada common law. First, if relief is not granted, Plaintiffs are likely to suffer irreparable injury as Defendant's trademark infringement would continue. Second, Plaintiffs have achieved success on the merits through Defendant's default. Third, the balance of hardships weighs in favor of Plaintiffs as they have expended a substantial amount of money in advertising and licensing making its Marks famous and creating and maintaining goodwill among its customers. Plaintiffs' efforts in protecting its trademarked logo from unauthorized use outweigh any harm Defendant may suffer in complying with the requirements of the law. Last, public interest favors the granting of permanent injunctions to protect Plaintiffs' trademark interests and to protect the public from fraud.

## IV.  ATTORNEYS' FEES AND COSTS

### A.  Legal Standard

A motion for attorney's fees and related nontaxable expenses must be filed no later than 14 days after the entry of judgment. Fed. R. Civ. P. 54(d)(2)(B)(i). The motion must state the

amount sought or provide a fair estimate. Fed. R. Civ. P. 54(d)(2)(B)(iii).  Local Rule 54-16(b) further provides that the motion must include the following:

 (1) A reasonable itemization and description of the work performed;

 (2) An itemization of all costs sought to be charged as part of the fee award and not otherwise taxable pursuant to LR 54-1 through 54-15;

 (3) A brief summary of:

  (A) The results obtained and the amount involved;

  (B) The time and labor required;

  (C) The novelty and difficulty of the questions involved;

  (D) The skill requisite to perform the legal service properly;

  (E) The preclusion of other employment by the attorney due to acceptance of the case;

  (F) The customary fee;

  (G) Whether the fee is fixed or contingent;

  (H) The time limitations imposed by the client or the circumstances;

  (I) The experience, reputation, and ability of the attorney(s);

  (J) The undesirability of the case, if any;

  (K) The nature and length of the professional relationship with the client;

  (L) Awards in similar cases; and,

 (4) Such other information as the Court may direct.

In addition to the requirements above, the motion must also be accompanied by an affidavit from the attorney responsible for the billings in the case to authenticate the information contained in the motion and to confirm that the bill has been reviewed and edited and that the fees and costs charged are reasonable. LR 54-16(c).  "Failure to provide the information

required by LR 54-16(b) and (c) in a motion for attorneys' fees constitutes a consent to the denial of the motion." LR 54-16(d).

### B. Discussion

Plaintiffs' Motion for Default Judgment did not state the necessary requirements pursuant to LR 54-16(b). In addition, Plaintiffs did not submit the attorney affidavit of authentication pursuant to LR 54-16(c). Because this Order on Plaintiffs' Motion for Default Judgment constitutes the "entry of final judgment," pursuant to Local Rule 54-16(a), Plaintiffs shall have fourteen (14) days from the date of entry of this Order in which to re-file a proper request for attorney's fees. Thus, Plaintiffs' request for award of attorneys' fees is denied with leave to re-file.

## V. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Default Judgment (ECF No. 14) is **GRANTED in part** and **DENIED in part.**

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter default judgment and grant the requested permanent injunction against Defendant Quality Star Benzz, LLC.

**IT IS FURTHER ORDERED** that the Court **DENIES** Plaintiffs' request for attorneys' fees and costs **with leave to re-file a motion** that complies with Rule 54-16 of the Local Rules of Practice for the United States District Court for the District of Nevada, **within fourteen (14) days from the date of entry of this Order.**

The Clerk of the Court shall enter judgment accordingly.

**DATED** this 29th day of March, 2013.

_____
Gloria M. Navarro
United States District Judge